Gerald Roylance
1168 Blackfield Way
Mountain View, CA 94040-2305

Phone (650) 948-1790

in pro per

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)**

| | |
|---|---|
| GERALD ROYLANCE,<br><br>            Plaintiff,<br>    vs.<br><br>ADT SECURITY SERVICES, INC.,<br>ELITESECURITY.US, LLC,<br>SEAN HADLOCK,<br>DOES 1-200<br><br>            Defendants. | Case No.: 5:08-CV-01101 JF RS<br><br>REPLY RE MOTION TO REMAND<br><br>Date:   May 9, 2008<br>Time:   9:00 AM<br>Dept:   5 3rd Floor<br><br>Judge:          Jeremy Fogel<br>Magistrate:     Richard Seeborg<br>Complaint filed: December 31, 2007<br>Trial Date:     None Set |

## I.    **INTRODUCTION**

Plaintiff moved to remand citing that (1) the removal petition was filed 31 days after EliteSecurity.US, LLC ("Elite") received the Complaint and therefore waived removal, (2) Elite had not affirmatively joined in the petition or filed its consent and therefore waived removal, (3) the TCPA is not a federal question, (4) TCPA jurisdiction is exclusively in federal court, and (5) ADT Security Services, Inc. ("ADT") has not met its burden to show the amount of controversy exceeds $75,000 because it does not believe plaintiff's reservation of damages is reasonable.

ADT's Response does not address the central issue in (1) or (2); ADT apparently admits (3) and (4); ADT does not reconcile its problem with (5). In addition, ADT brings a specious

1

waiver argument and submits a bizarre affidavit about service on Elite. Its arguments are without merit. The case should be remanded.

## II.  THE LATE PETITION

ADT does not address the core issue in its late petition: 30 days had already expired since Elite received a copy of the pleading. The removal statute states, "The notice of removal of a civil action or proceeding shall be filed <u>within thirty days after the receipt</u> by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…." (28 U.S.C. § 1446(b), emphasis added.) The petition was filed 31 days after Elite received the initial pleading as evidenced by the certified mail return receipt. ADT wants the clock to start after service has been perfected – which would give Elite another few days to join the removal. ADT does not argue why the clock should start at perfection rather than removal. ADT merely asserts the clock starts at perfection; if it doesn't, then ADT is dead in the water. ADT did not argue the issue, so it has conceded the point.

ADT argues that Birchall did not receive the pleadings on January 22, 2008, but that does not mean that Elite did not receive the pleadings on January 22. The Birchall affidavit is addressed below.

## III.  JOINDER

EliteSecurity.US, LLC neither joined in the removal nor filed its consent within 30 days as required by 28 U.S.C. § 1446(b). Elite had to make a formal representation to the Court, but it did not. ADT's Response is silent on this issue and therefore concedes the point. The moving papers argued that counsel's representation that a third defendant consents to removal is

2

inadequate. Authority was cited. ADT does not dispute that authority. ADT offers Birchall's declaration that Elite had consented, but a procedural defect cannot be cured that way. An official joinder or consent must be filed with the Court within 30 days. (See Motion to Remand, 7:19-8:25.)

ADT does not argue why its tepid and improper allegation that "based on information and belief, it is Counsel for Defendant's understanding that Elite consents or otherwise is unopposed to the removal of this action to federal court" should carry any weight at all. [Notice of Removal, 2:21-23.]

The Notice of Removal was not signed by a lead attorney as required by F.R.C.P. 11(a), so the tepid representation is not even contained in a valid pleading. Plaintiff has challenged the signature in a March 4 email to attorneys Long, Tang, and Benson. (Declaration of Gerald Roylance, ¶ 3.) ADT has not corrected the signature within a reasonable time, so the court would be required to strike the Notice of Removal under F.R.C.P. 11(a). The appropriate remedy in this case is to view the Notice of Removal as defective and remand the case.

ADT's Response admits service was perfected on Elite on January 27, 2008. (ADT's Response to Motion to Remand, 2:6.) Elite did not file a joinder by February 26, 2008. A search of the docket suggests that Elite filed a joinder on April 2, 2008 (over a month late). See Docket 42, "ANSWER to Complaint (Notice of Removal) Joinder & consent to removal byElite Security US, LLC." However, the actual document does not consent to removal. The docket entry is mislabeled; it only contains an answer. Furthermore, the Certificate of Service signed by Linda Holbrooks only states the document is the "Answer and Affirmative Defenses of Defendant ELITESECURITY.US, LLC".

If Hadlock needed to file his consent, then his consent is also too late. He was served on February 22, he received papers on February 26, and service perfected on March 3. He filed his joinder on April 17 – more than 30 days after perfection.

### IV.     FEDERAL QUESTION

The TCPA is not a federal question. In confusing language, ADT apparently concedes the point. (Response, 3:17-21.)

### V.     EXCLUSIVE JURISDICTION

The moving papers argued that the state courts have exclusive jurisdiction for TCPA claims. ADT did not argue the point and therefore conceded it. Plaintiff's complaint includes a punitive damages attachment from Civil Code § 3294. That section is not a cause of action by itself, but it allows plaintiffs to obtain punitive/exemplary damages for malicious torts. It attaches to another cause of action.

### VI.     AMOUNT IN CONTROVERSY

ADT Security Services, Inc. has not shown that it is more likely than not that the amount in controversy exceeds $75,000. The face of the complaint states the action is for $5,000 trebled to $15,000 plus punitive and exemplary damages. It is absolutely clear that the amount in controversy is at least $15,000. ADT continues to misunderstand plaintiff's argument about the reservation of damages. Submitting the initial demand letter does not help ADT. If the face of the complaint demanded more than $75,000, then ADT would have established the amount in controversy. Since the face of the complaint does not claim more than $75,000, ADT must provide credible evidence that the amount in controversy is over $75,000. ADT may use

4

documents such as settlement offers to establish the amount, but only if those amounts are reasonable. A settlement offer presumptively provides a realistic amount in controversy. A demand letter or a reservation would not carry the same weight; they are measures of an outer limit.

The problem is that ADT shot itself in the foot. In its Answer, ADT announced that plaintiff was seeking an unreasonable amount of damages. (ADT's Sixth and Seventh Defenses.) That was argued in plaintiff's moving Memorandum at 13:1-4. Having asserted that the amount is unreasonable, ADT must now argue what a reasonable amount in controversy is – federal jurisdiction is ADT's burden and not the plaintiff's. ADT tries to shift the burden to plaintiff (Response 4:18-20), but that is not how it works. ADT must prove to the court what a reasonable amount in controversy is. ADT hasn't done that.

Attorney Robert Hadlock asserted in a March 10, 2008, letter to plaintiff that plaintiff's claim is "baseless and frivolous", that $15,000 in compensatory relief is "highly doubtful", and "you will never recover the relatively huge $180,000 in punitive damages you are attempting to" obtain "from Mr. Hadlock and the other defendants." (Declaration of Gerald Roylance, ¶ 4.) The tenor of Hadlock's letter is that plaintiff's recovery would be less than a single digit ratio on $5,000, which maxes out at $45,000.

Plaintiff recently submitted a default prove-up against three groups of TCPA/CLRA defendants. Plaintiff had reserved $20,000 in punitive damages against each group through the statement of damages mechanism. Plaintiff did not, however, ask for $20,000 in punitive damages against the defaulting defendants. Instead plaintiff sought $500, $1,000, and $3,000 in punitive damages against the respective groups. (Declaration of Gerald Roylance ¶ 7.)

## VII.  THE BIZARRE AFFIDAVIT OF MICHAEL BIRCHALL

ADT submits the bizarre affidavit of Michael Birchall, an owner of codefendant Elite. The affidavit is disturbing for what it says, how narrowly it says it, and what it does not say.

Birchall claims that the signature on the green card is not his, and that he did not receive the Complaint on January 22 as suggested by the return receipt.  Birchall does not deny that Elite actually received the Complaint on January 22 nor that he ultimately received the complaint through the certified mail service.  Plaintiff spoke with Elite's attorney and was given more detail.  (Declaration of Gerald Roylance, ¶ 6.)  Apparently the Complaint (and presumably the Summons) somehow appeared in Birchall's office at Elite one day, but Birchall is not sure of the day or how it got there.  In the best possible light, someone at Elite signed for the certified mail but wrote Birchall's name on the card.  That does not mean that defendant Elite did not receive the Complaint on January 22 – it just means that somebody other than Birchall signed for it.  The affidavit does not deny certified mail service – it just shows that Elite mishandled some very important mail.  The certified mail was directed to an address that Elite admits is where it "operates at".  (Elite Answer, ¶ 3.)  The postman would have obtained a signature from someone at Elite.  In some sense, Elite is seeking to be excused for hiring unscrupulous employees.

Birchall's blanket denial of <u>personal service</u> is irrelevant.  Personal service was not alleged.  It is a pregnant denial.

Birchall's statement to ADT that he had not been served is also irrelevant.  The statement would be literally true even if Elite had been served.  He could say anything to ADT.  That his statement may have misled ADT does not cure ADT's joinder problem.

Birchall's representation that he told ADT that Elite consents to removal does not help ADT either.  Elite had to make that representation to the Court by formally filing a paper.

6

5:08-CV-01101 JF RS:  Reply re Motion to Remand

Birchall's affidavit could reasonably get Elite excused from a default by reason of a mistake or inadvertence. However, even with that mistake, Elite's only Court filing that consents to removal is Birchall's affidavit – which ADT (not Elite) filed on April 16, 2008.

## VIII. **PLAINTIFF'S ALLEGED WAIVER**

ADT puts forward the argument that plaintiff has waived remand. ADT wants a world where a Notice of Removal prohibits a plaintiff from actively pursuing his lawsuit – even to the point of prohibiting plaintiff from seeking remedies to which the state forum entitles him. Such a notion is preposterous. Plaintiffs do not rollover and play dead at the whim of the defense.

ADT concedes that plaintiff may file a request for a clerk's default (and presumably a jury demand) without waiving his right to remand. Initially, that is all the plaintiff did. ADT concedes that does not operate as a waiver. Plaintiff was only asking the clerk to perform ministerial duties.

(ADT also appears to have confused the notion of filing a request for default from filing a request for default judgment. Plaintiff did not do the latter.)

ADT contends that plaintiff's filing of other motions operates as a waiver. The problem with that view, and with the authorities that ADT cites, is that once plaintiff has filed a motion to remand, is plaintiff still forbidden from filing other motions? Plaintiff filed the motion to remand, the motion to enter default, and the motion to strike between 2:33 and 2:37PM. ADT wants a world where plaintiff must sit on his hands until his case is removed. On its face, that is an unreasonable position.

Furthermore, plaintiff has not sought relief that he would not seek in state court. The Notice of Removal kicked plaintiff out of state court – plaintiff can only file in federal court

7

now. In state court, plaintiff is entitled to demurrer to an answer, move to strike an answer, and to enforce a default. If plaintiff did not make these motions promptly and lost his motion to remand, then he would have waived his rights to make the motions in federal court. There are time limits, and if plaintiff sits on his hands, then he waives those rights. ADT wants a world where a plaintiff is damned if he does, and damned if he doesn't.

Plaintiff has not sought to amend the complaint in federal court. He has not sought an early federal subpoena or deposition even though he is curious about Hadlock's business partners. Those are matters that can wait. There's a federal 20-day clock on a motion to strike. He did not file a bunch of motions, wait for them to be denied, and only then move to remand.

## IX.   CONCLUSION

Plaintiff prays for remand.

Respectfully submitted,

Dated: April 25, 2008              __/s/_____
                                   Gerald Roylance

Gerald Roylance
1168 Blackfield Way
Mountain View, CA 94040-2305

Phone (650) 948-1790

in pro per

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)**

| | |
|---|---|
| GERALD ROYLANCE, | Case No.: 5:08-CV-01101 JF RS |
| Plaintiff, | DECLARATION OF GERALD ROYLANCE IN SUPPORT OF REPLY RE MOTION TO REMAND |
| vs. | |
| ADT SECURITY SERVICES, INC., ELITESECURITY.US, LLC, SEAN HADLOCK, DOES 1-200 | Date: May 9, 2008<br>Time: 9:00 AM<br>Dept: 5 3rd Floor |
| Defendants. | Judge: Jeremy Fogel<br>Magistrate: Richard Seeborg<br>Complaint filed: December 31, 2007<br>Trial Date: None Set |

Plaintiff Gerald Roylance declares:

1. I am a resident of California over the age of eighteen and am the Plaintiff in the above-captioned action. I make this Declaration based upon my own personal knowledge, and if called as a witness to testify as to these matters, I could and would competently testify that the matters set forth below are true and correct.

2. On February 18, 2008 (President's Day), I called Elite in an attempt to get some information about Sean Hadlock. I reached Michael Birchall. I told him who I was, and he recognized my name. He told me that ADT had called about the lawsuit. He told me that he had just sent a package of information to ADT. Michael Birchall told me that Sean Hadlock was not

1

a vice president and that Hadhaus Marketing, Inc. was involved. Birchall stated that he was caught in the middle of this. He claimed to be honest. I sent a letter to Birchall on February 26, 2008 describing the telephone call. Michael Birchall did not deny service during the call, but I did not directly ask that question. The statements that Birchall made never suggested to me any doubt that Elite knew it had been sued and served. Otherwise why would Birchall complain about being caught in the middle?

3. On March 4, 2008, I sent an email to Patrick A. Long, Abraham H. Tang, and Connie L. Benson. The email pointed out several defects in the Notice of Removal filing. The first paragraph stated, "Federal Rule of Civil Procedure 11 places particular requirements upon those who present pleadings to the Court. Plaintiff hereby puts ADT Security Services, Inc. and its attorneys on notice of defects in certain pleadings and its duty to correct." The third paragraph stated, "The Notice of Removal was signed by Connie L. Benson. It was not signed by an attorney of record in the party's name. The signing attorney did not state the signer's name, address, State Bar Number, and telephone number." I did not receive a response to the email. The Notice of Removal has not been signed by a lead attorney in this case.

4. Robert J. Hadlock, attorney for Sean Hadlock, sent me a letter dated March 10, 2008. Paragraph 3 of the letter states, "Your complaint, at least as it relates to Mr. Hadlock, is baseless and frivolous." The second paragraph on page 2 states:

> Your prayer for damages is ludicrous. Even if you prevail for the *maximum* compensatory relief you claim – $15,000 – which is highly doubtful, you will never recover the relatively huge $180,000 in punitive damages you are attempting to [REDACTED – read as "obtain"] from Mr. Hadlock and the other defendants, based on your improperly filed Statement of Damages. *See Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1182 ("few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). This is especially true given the fact that punitive damages are already built into the statutes under which you are

2

    suing. You will never be able to demonstrate either the type of truly reprehensible behavior or financial condition in regard to Mr. Hadlock personally to justify such an award against him.

5. On March 13, 2008, I sent a letter to Michael Birchall. The letter asserted that Elite had been served and needed to answer the complaint. Michael Birchall did not respond to the letter. In particular, he did not deny service.

6. On April 21, 2008, I called Elite's attorney, Michael Dini, to set a date to strike portions of Elite's Answer. During that call, we discussed Birchall's affividavit and the narrowness of the statements. Dini told me that Birchall discovered the Complaint in his office one day, but he did not know how it got there or when it got there. Birchall quizzed his employees, but none of them confessed to signing the green card. (The quizzing would presumably be after I sent a scan of the green card to ADT's Attorney Long on February 27, 2008 – more than 1 month after the green card had been signed.)

7. I recently filed requests for default judgments against three groups of defendants – local chiropractors and a dentist. I had served a $20,000 punitive damage reservation on each of the three groups. When I requested default judgments, I did not ask the court for $20,000 each – I asked for much less. For one group, I asked for $3,000 in TCPA statutory damages and $500 in punitive damages. For the second, I asked for $4,500 in TCPA statutory damages and $1,000 in punitive damages. For the third, I asked for $6,000 in TCPA statutory damages and $3,000 in punitive damages.

8. The above statements are given under penalty of perjury. Executed in Mountain View, California.

3

5:08-CV-01101 JF RS:  Declaration of Gerald Roylance in support of Reply re Motion to Remand

1

2                                               Respectfully submitted,

3

4  Dated: April 25, 2008                        __/s/_____
                                                Gerald Roylance
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25