Gerald Roylance
1168 Blackfield Way
Mountain View, CA 94040-2305

Phone (650) 948-1790

in pro per

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)**

| | |
|---|---|
| GERALD ROYLANCE,<br><br>        Plaintiff,<br>   vs.<br><br>ADT SECURITY SERVICES, INC.,<br>ELITESECURITY.US, LLC,<br>SEAN HADLOCK,<br>DOES 1-200<br><br>        Defendants. | Case No.: 5:08-CV-01101 JF RS<br><br>REPLY RE MOTION TO STRIKE THE ANSWER OF SEAN HADLOCK<br><br>F.R.C.P. 12(f)<br><br>Date:   July 11, 2008<br>Time:  9:00 AM<br>Dept:   3, 5th Floor<br><br>Judge:          Jeremy Fogel<br>Magistrate:    Richard Seeborg<br>Complaint filed:  December 31, 2007<br>Trial Date:       None Set |

## I.    <u>INTRODUCTION</u>

Plaintiff seeks to strike all or portions of Sean Hadlock's ("Hadlock") Answer. Plaintiff challenged Hadlocks's late filing, his unsigned answer, his right to claim a lack of sufficient information or knowledge to form a belief, and the appropriateness of merely naming defenses rather than giving plaintiff (and the Court) clear notice of the affirmative defense. Hadlock's response ignores his late filing. Attorney Robert Hadlock cured the unsigned Answer by joining this Court's bar (Document 64) and bending to General Order 45 (although he took his time doing it). Hadlock agrees that denials based on a lack of sufficient information and belief can be

1

1 improper, but then argues for a negligible duty to investigate and an extremely high standard for
2 sufficient information. Hadlock's citations support striking affirmative defenses that do not give
3 plaintiff fair notice.

## II.     DISCUSSION

### A. Late Filing of the Answer

Hadlock completely ignores his culpable failure to file an answer within the time to plead. The clerk should have entered Hadlock's default when plaintiff requested it (the rule <u>requires</u> the clerk to enter default when requested); the Court should enter the default now. Hadlock has not offered a reasonable excuse for his delay – and his delay was deliberate from his attorney's mouth.

The failure to answer is culpable. *Franchise II, LLC v Huntington Restaurants Group, Inc.* (9th Cir. 2004) 375 F3d 922, 926. "If a defendant "has received actual or constructive notice of the filing of the action and failed to answer," its conduct is culpable. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 690 (9th Cir.1988) (quoting *Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th Cir.1987))." Id, ¶ 16.

In *TCI Group Life Insurance Plan v Knoebber* (9th Cir 2001) 244 F3d 691, ¶ 29, there was no indication that Knoebber "deliberately tried to manipulate the legal system". Hadlock's attorney did try to manipulate the legal system: he avoided answering in state court because he knew about the removal, and he avoided answering in federal court by claiming he had not been served with them. (Robert Hadlock Decl., Doc. 48, 4:13-19.) Hadlock was deliberately delaying the proceedings.

### B. Denials on Lack of Information and Belief

Plaintiff has attacked a handful of responses that claim a lack of sufficient information and belief where it is presumptively within Hadlock's power to admit or deny. (Complaint ¶¶ 2, 3, 5, 12, 43.) Plaintiff has not attacked straight admissions or denials.

We can run down the list.

For ¶ 2, Hadlock employed a California attorney. The attorney should have been able to check the California Secretary of State's online database to look up ADT Security Services, Inc. Hadlock's defense (Opposition 3:15-21) is specious. The Secretary's online database would be a business record of the State of California. Furthermore, a writing published by a state agency is presumed accurate under California Evidence Code §§ 1340 and 1530(a)(1). Despite Hadlock's contention, the information in the online database specifies when the online database was last updated. The information for ADT Security Services, Inc. recently had the statement "The information displayed here is current as of "JUN 20, 2008" and is updated weekly." The records also specify the filing date, 4/10/1995. Hadlock's argument that there are other entities with similar names is lame. The allegation included a registration number; there was no ambiguity about the entity.

The argument for ¶ 3 is similar, but it concerns a Utah registration. Hadlock has registered his own company, Hadhaus Marketing, LLC with Utah. He should know how to do name searches in Utah. Hadlock also advances the argument that because he could not determine all the facts in the allegation, then he could deny the entire group rather than traversing the paragraph. Hadlock traversed the allegations in other paragraphs. See, for example, ¶ 39.

3

Reply re Motion to Strike the Answer of Sean Hadlock

1  Plaintiff is willing to concede the LI&B denial of ¶ 5.  Hadlock may not have known how to check a website registration.

For ¶ 12, Hadlock could have called telephone information at 650-555-1212 or consulted an online telephone directory to check the plaintiff's published telephone listing. Those actions require minimal effort.

For ¶ 43, Hadlock refuses to consult a calendar.  His California attorney should be able to conclude a particular date is a Sunday – and that is leaving alone the legal interpretation that it is a business day!  Hadlock then claims that Civil Code § 1689.5(e) discusses a procedural issue. (Opposition 4:4-6.)  Apparently Hadlock's attorney has confused the Civil Code with the Code of Civil Procedure.  Civil Code section 1689.5(e) states:

```
   (e) "Business day" means any calendar day except Sunday, or the
following business holidays: New Year's Day, Washington's Birthday,
Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans'
Day, Thanksgiving Day, and Christmas Day.
```

Plaintiff has not attacked all of Hadlock's denials on a lack of information and belief ("LI&B").  Plaintiff has not challenged the Complaint ¶ 27 LI&B denial of a prerecorded call. Plaintiff believes Hadlock should have admitted the allegations, but that LI&B denial does not fit into a presumptive category and is not an obvious evasion.

## C. Affirmative Defenses

Hadlock claims that federal court is "notice pleading" and "does not require that one assert factual allegations". (Opposition 4:16-18, citing a 1999 case.)  The Supreme Court disagrees. Under the United States Supreme Court's new pleading standards in *Bell Atl. Corp. v. Twombly*, every pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Furthermore, "[f]actual

allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965.

Without factual allegations, plaintiff is left trying to puzzle out the defenses. The primary injuries were prerecorded calls on particular dates that did not have any continuing damage. Mitigation might be a common defense, but how does it come into play here? How is plaintiff estopped from seeking damages for those injuries?

Hadlock cites *Ganley v County of San Mateo* (ND CA 2007) C06-3923 TEH, Doc 28) as a similar motion to strike affirmative defenses: comparative fault, fault of third parties, unclean hands, estoppel, waiver, mitigation, and consent. Hadlock claims that with the exception of the estoppel defense, the Court agreed with the defendant. *Ganley* is an employment action, and that action had several different issue. Ganley claimed she was terminated as a corrections officer, but San Mateo argued that she had not been fired but had received a disability retirement because she could no longer perform the duties of a corrections officer. Furthermore, Ganley had not signed up for rehabilitation sessions that were offered to her. She was a former union leader who knew how employees could lodge protests, but she had remained silent. Waiver, mitigation, and consent were on the table and viable.

Plaintiff's attack on some affirmative defenses is that they are not affirmative defenses at all. Thus the defenses are immaterial and should be stricken. The Ninth Affirmative Defense is a prime example.

Plaintiff's attack on many affirmative defenses is that they do not state facts to put the plaintiff on notice. Although federal procedure has the label of "notice" pleading, federal procedure still requires pleading facts. For example, the mitigation of damages defense fails to provide plaintiffs with fair notice of the grounds upon which they rest. "Like complaints,

affirmative defenses must give plaintiff 'fair notice' of the defense being advanced." *Qarbon.com Inc. v. Ehelp Corp.*, 315 F.Supp.2d 1046, 1049 (N.D. Cal. 2004); *American Top English v. Lexicon Mktg. (USA), Inc.*, 2004 WL 2271838, *10 (N.D. Ill. Oct. 4, 2004) ("Affirmative defenses are pleadings, and thus must set forth a 'short plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a).") A defendant is required to set forth the elements of the defense and the factual basis for it. *Qarbon.com*, 135 F. Supp. 2d at 1049-50. "A reference to a doctrine, like a reference to statutory provisions, is insufficient notice." *Id*. at 1049. Bare conclusory allegations do not satisfy this requirement. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1964-65 (explaining that a plaintiff's obligation to state the ground for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do").

    Plaintiff concedes that mere mention of a defense in a particular context may constitute sufficient notice. For example, a failure to mitigate in an unjust termination of employment action clearly suggests that plaintiff didn't look for other employment. *Ganly*, for example, was an employment case. Unjust termination clearly suggests continuing damages (loss of wages) and an appropriate mitigation (look for another job). In an obvious situation, the label itself can be "fair notice". In the present case, failure to mitigate damages does not make sense. There was no continuing damage: the damage from the prerecorded call stopped when the plaintiff hung up the telephone. Damages under the TCPA (First Cause of Action) relate to the initial prerecorded calls (where plaintiff could only listen to the messages and was powerless to unring the bell) and the subsequent failures by Defendants to identify themselves or supply do-not-call policies. Damages under the CLRA (Second Cause of Action) relate to the initial prerecorded calls (e.g., failure to be introduced by a live person). No damages are sought (or can be sought)

under the Third or Fourth Causes of Action.  There are no recoverable damages for the violation about the notice of cancellation.  Even if there were, plaintiff mitigated that damage by faxing the notice of cancellation to ADT.

Similarly, the bare defenses of estoppel, waiver, conduct, and unclean hands do not make sense in this case.  The face of the complaint has plaintiff receiving an anonymous prerecorded call on March 27, 2007.  When he pressed a key and spoke with a live person, that person identified ADT, but he provided a bunch of disinformation – e.g., a nonexistent company name, a nonexistent website, and a bogus telephone number.  When plaintiff got a second prerecorded call on April 12, 2007, plaintiff again pressed a key and spoke with a live person.  Although the live person identified ADT, he did not identify the dealer.  Plaintiff expressed interest to identify the anonymous dealer.  In effect, plaintiff executed a "sting" operation.  When the police run a faux fencing operation, that does not generate an estoppel, waiver, or unclean hands defense that lets the burglars/patrons off the hook for the initial burglaries.  What act did plaintiff do that caused defendants to make the prerecorded calls?  The use of prerecorded calls requires prior express consent.  Prerecorded calls must identify the caller; they may not be anonymous.  What act did plaintiff do that caused Defendants to send anonymous messages?  Even if plaintiff had purchased an alarm system, what act did plaintiff do that caused Hadlock to send an improper (it counted Sunday) cancellation notice?

The list of affirmative defenses should not be generic laundry list or a wish list.  The affirmative defenses should be plausible and supportable.

### III.  CONCLUSION

Plaintiff asks the Court to strike all of Hadlock's Answer and enter his default.  In the alternative, plaintiff asks the Court to strike portions of Hadlock's Answer.

Respectfully submitted,

Dated: June 27, 2008                    __/s/_____
                                        Gerald Roylance