Gerald Roylance
1168 Blackfield Way
Mountain View, CA 94040
(650)948-1790
*Plaintiff in Pro Per*

Richard M. Simses, Esq., *(Pro Hac Vice)*
Paul M. Lavelle, Esq., *(Pro Hac Vice)*
**Abbott, Simses & Kuchler, APLC**
1360 Post Oak Blvd., Suite 1700
Houston, Texas 77056
Telephone:  (713) 627-9393

Patrick A. Long,   SBN 48221
**Long, Williamson & Delis**
400 N. Tustin Avenue, Suite 370
Santa Ana, California 92705
Telephone:  (714) 668-1400
Attorneys for Defendant
ADT SECURITY SERVICES, INC

**TRIEBSCH & FRAMPTON**
Michael Dini
300 N. Palm
P.O. Box 709
Turlock, CA 95381-0709
Telephone: (209)667-2300
Fax: (209)667-6157
Attorneys for Defendant
ELITESECURITY US, LLC

**SMITH, CHAPMAN & CAMPBELL**
A Professional Law Corporation
1800 North Broadway, Suite 200
Santa Ana, CA 92706
Telephone (714)550-7720
Fax: (714)550-1251
Attorneys for Defendant
SEAN HADLOCK

1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| GERALD ROYLANCE,<br><br>                  Plaintiff,<br>        vs.<br><br>ADT SECURITY SERVICES, INC.,<br>ELITESECURITY.US, LLC,<br>SEAN HADLOCK,<br>DOES 1-200<br><br>                  Defendants. | Case No.: 5:08-CV-01101 JF RS<br><br>JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT<br><br>Date:  August 8, 2008<br>Time: 10:30 a.m.<br>Dept: 53rd Floor<br><br>Judge:            Jeremy Fogel<br>Magistrate:     Richard Seeborg<br>Complaint filed:  12/31/07<br>Trial Date:       None Set |

Pursuant to this Honorable Court's Joint Case Management requirements and Federal Rule 26(f), the parties submit the following:

## I.  JURISDICTION AND SERVICE

The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

////////

**Plaintiff's Contentions**

Plaintiff has vigorously disputed this Court's jurisdiction. Defendants have asserted the amount in controversy exceeds $75,000 and there is diversity. However, Elite, after suggesting to plaintiff that a Shaun McCracken and a California voice blasting company were involved, did not provide suitable identification of those entities. Hadlock, who apparently hired the California voice blaster, refused to identify the voice blaster or its principals until initial disclosures. The effects have been delay and a deliberate course of action to maintain diversity. Plaintiff indicates an intent to add additional parties to this matter.

**Defendants' Contentions**

Defendants contend this court has diversity jurisdiction, as the court ruled in denying Plaintiff's motion to remand.

## II. FACTS

A brief chronology of the facts and a statement of the principal factual issues in dispute.

**Plaintiff's Factual Contentions**

Plaintiff received an anonymous prerecorded call on March 27, 2007. Although plaintiff pressed a key and talked with a live person, "John". John identified ADT and Utah. The telephone numbers and websites provided by John were misleading.

Plaintiff received a second anonymous prerecorded call on April 12, 2007. Plaintiff pressed a key and talked with "Ed". Ed identified ADT but did not identify any other company. In order to identify the caller, plaintiff asked to see a written copy of the contract. Subsequently, plaintiff learned the identity of EliteSecurity.US, LLC and Sean Hadlock.

Hadlock represented that he was V.P. Sales for Elite Security. Hadlock gave a telephone number that was the number for Elite Security. Plaintiff reached Hadlock by calling that number. The DHL waybills for the contract used EliteSecurity.US, LLC's address. A certified demand letter identified Sean Hadlock as V.P. of Sales for EliteSecurity. ADT responded to the demand letter, but Elite did not. In particular, Elite did not deny Hadlock was its V.P. of Sales at that time. (After the suit was filed, Elite made such a denial.)

In a conversation, Michael Birchall of Elite Security stated that the firm making the prerecorded calls was in southern California. In a letter, Hadlock acknowledges that the firm he used made illegal prerecorded calls. Despite those comments, all defendants dispute that plaintiff received the prerecorded calls. ADT's response to the demand letter pointed its finger at Elite Security, claimed indemnity, and copied its response to Elite. The response did not identify any disciplinary action or investigation of Elite. Elite did not respond to the demand letter.

Hadlock has pointed his finger at Seamless Marketing, LLC, Shaun McCracken, Jay Williams, and Will Martin.  Hadlock further indicates that these others have deliberately and maliciously chosen to use an illegal telemarketing method.

Hadlock believes Seamless Media, LLC is a DE entity, but Roylance believes the identification is more complicated.  The individuals have telephone numbers in the 949 area code (California).  Plaintiff believes the last two names may actually be Jaime Williams and William Martin.  One of the telephone numbers provided by Hadlock ties to Seamless Media Streaming, LLC ("SMS"), which is a California LLC.  Other business names are also used: SeamlessMediaCorp.com,    SeamlessMarketing.net,    ThorMediaMarketing.com. There is also a suspended Seamless Marketing Solutions, Inc.  Roylance further believes that these individuals are well hidden.

Furthermore, there appear to be ties to a Ronald Gagnon, Starr System Satellite, Cash Crop Clothing, NextGeneration Satellite, NextGeneration Wireless, and G & B Next Generation Communications.

Sorting this all out will take time.

*/ / / / / /*

**Defendants' Factual Contentions**

**1. ADT's Factual Contentions:**

ADT denies all of the allegations made by plaintiff against it in this litigation. ADT's position is that it did not make any prerecorded telephone calls to Mr. Roylance and is not aware of any prerecorded telephone calls that were allegedly made to Mr. Roylance. While EliteSecurity is an ADT Authorized Dealer, ADT did not authorize EliteSecurity to make any prerecorded telephone calls to Mr. Roylance. Nor did ADT authorize Sean Hadlock or anyone else to make any prerecorded telephone calls to Mr. Roylance. If these prerecorded telephone calls were made to Mr. Roylance, ADT did not authorize nor ratify such calls.

EliteSecurity nor Hadlock are agents of ADT. The contract between ADT and its authorized dealers specifically states that the authorized dealers are not agents of ADT, but rather act as independent contractors. It also requires its dealers to abide by all local and federal laws. As such, ADT is not liable for the actions, if any of EliteSecurity or Hadlock in this matter.

ADT reserves all rights, including the right to seek a defense and indemnity, as well as attorney fees and cost already incurred defending the baseless allegations of plaintiff, as to any persons or entities that made any illegal calls. ADT also reserves its rights to assert contractual defense and indemnity claims

against the co-defendants in this litigation.  ADT places third party responsibility at issue through its affirmative defenses.

**2. EliteSecurity.US, LLC's Factual Contentions**:

With respect to Mr. Roylance's charging allegations, Elite's position is that it made no prerecorded calls, that prior to becoming aware of Mr. Roylance's complaint it had no knowledge or reason to suspect that prerecorded calls were used by anyone else (whether Mr. Hadlock, Mr. McCracken, Hadhaus, or some other person or entity).   Moreover, since no principal of Elite was present at the time any alleged calls were made, it has no first hand knowledge bearing on this topic.

Moreover, Elite and its principals have no first hand knowledge of any business arrangement between Mr. Hadlock, Mr. McCracken, Hadhaus or any other person or entity that may have made the alleged calls, although Elite suspects that Mr. Hadlock and Mr. McCracken can shed light on that aspect.  Elite reserves all rights, including the right to seek a defense and indemnity, as to any persons or entities that made any illegal calls.  Elite places third party responsibility at issue through its affirmative defenses.

**3. Mr. Hadlock's Factual Contentions:**

Mr. Hadlock first takes issue with Plaintiff's unsupported assertion that he has refused or failed to provide information in some deliberate attempt to

artificially maintain diversity in the instant case. Mr. Hadlock has done nothing of the sort.

Mr. Hadlock, like Elite, asserts that neither he nor HadHaus made any prerecorded calls, that prior to becoming aware of Mr. Roylance's complaint he had no knowledge or reason to suspect that prerecorded calls were used by anyone else (either Mr. McCracken, his company, or some other person or entity). Moreover, since neither Mr. Hadlock nor any other employee of HadHaus was present at the time any alleged prerecorded calls were made, he has no first hand knowledge bearing on this topic.

Mr. Hadlock reserves all rights, including the right to seek a defense and indemnity, as to any persons or entities that made any illegal calls. Mr. Hadlock has placed third party responsibility at issue through his affirmative defenses.

Additionally, neither Mr. Hadlock nor HadHaus ever received any pre-litigation notice from Plaintiff of the alleged improper behavior, nor any opportunity to cure same, before he was served with a summons and complaint.

### III. LEGAL ISSUES

A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

/ / / / / /

8

**Plaintiff's Legal Contentions**

ADT says it is blameless, did not know prerecorded calls were being used, has no respondeat superior liability, and points its finger at EliteSecurity.US, LLC. ADT has not described any anti-ratification steps beyond copying an indemnity warning to Elite.

Plaintiff's position is the finger pointing does not matter for TCPA violations. The TCPA has strict vicarious liability. The prerecorded calls were made on behalf of ADT and Elite. The calls were selling ADT's residential alarm monitoring service, and ADT authorized Elite to sell those systems. Plaintiff was put into ADT's system. The DHL documents included an ADT contract and identified Elite.

Strict vicarious TCPA liability is well settled. *Memorandum Opinion and Order*, FCC 95-310, 10 F.C.C.R. 12391, (1995) ¶ 13 provides that "Our rules generally establish that the party on whose behalf the solicitation is made bears ultimate responsibility for any violations. Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." See also ¶ 35, "entities on whose behalf facsimiles are transmitted are ultimately liable for compliance....". FCC 00-378 (2000) footnote 24 states:

> Employers are routinely held liable for breach of statutory duties, even where the failings are those of an independent contractor, and even where

the party seeking redress is other than the government.  See Restatement [Second] of Torts ' 409, comment b at 371.  See also, e.g., Alva Steamship Co., Ltd. v. City of New York, 616 F.2d 605, 609 (2d Cir. 1980) (exception to the rule of nonliability for the negligence of independent contractor is the negligence of an independent contractor who performs a duty imposed by statute on the employer").

Case law upholds the notion of strict vicarious liability.  "The FCC obviously construes the term 'use' in the TCPA s prohibitions to include both direct use, and indirect use by way of an agent . . . This is wholly reasonable, since if liability could be avoided by using such an intermediary, advertisers could use a series of fly-by-night fax advertising firms to send waves of unsolicited faxes, and be insulated from liability.  Such a construction would clearly allow avoidance of the statutes, and such a construction is to be avoided.  *Zeid v. The Image Connection, Ltd.*, No. 01-AC-002885-Z-CV at 9 (Mo. Cir. Ct. 2001) (order granting summary judgment).

Plaintiff is aware that a principal can escape punitive damages if the principal did not know of the illegal acts before hand and did not subsequently ratify them.  Currently plaintiff believes the defendants either knew prerecorded calls were being used or they subsequently ratified those calls.  ADT apparently did not investigate the allegations, did not redress the violations, did not discipline

Elite, did not repudiate, and accepted the benefit of the prerecorded calling campaign. Elite did not redress or remedy the violations. Elite apparently also did nothing to investigate or discipline Hadhaus or Hadlock. Plaintiff believes Hadlock knew that prerecorded calls were being used, and that Hadlock subsequently ratified those calls by continuing to hide the identity of the voice blaster.

Plaintiff will use cases such as *Roberts v. Ford*, 224 Cal.App.3rd 793, 801 (ratification may be established by any failure to repudiate & redress), *Gallagher v. California Pacific Title & Trust Co.* (1936) 13 Cal.App.2d 482, 493 ("unless principal is willfully ignorant or purposely refrains from seeking information"), *Holland v Nelson* (1970) 5 Cal.App.3d 308, 314 (ratify by failure to discharge the agent), and *Volandri v. Hlobil* (1959) 170 Cal.App.2d 656.

If Sean Hadlock is not, in fact, V.P. Sales for Elite, then Sean Hadlock is an ostensible agent for Elite with management authority equivalent to being a V.P. Sales. Elite did not exercise ordinary care. California Civil Code § 2300.

**Defendants' Legal Contentions**

**1.    Elite's Legal Position**

Elite contends that is has no vicarious liability of any kind for any person/entity that made any violative calls, and that Elite engaged in no activity that might be viewed as an adoption or ratification of any such conduct. Elite also

disputes Mr. Roylance's legal positions regarding vicarious or strict liability exposure under the statutory schemes invoked, the nature and extent of the money he seeks to recover, and the propriety of seeking punitive damages. Given that Elite has not engaged in any prohibited conduct, Elite also disputes the propriety of injunctive relief. Elite also asserts that the defenses pled either bar or limit the damages sought by plaintiff. Contrary to plaintiff's position, the strict liability arguments advanced by Mr. Roylance are unsupported by any California or Ninth Circuit authority and are hardly well settled. Additionally, there is a serious due process issue as to whether strict liability may be imposed, as Mr. Roylance contends, since the TCPA provides no notice that a party may face liability for the illegal activities of an independent contractor. This case is just beginning and Elite's investigation and research are incomplete. Elite expressly reserves the right to supplement or modify its position.

Elite joins the legal position of Mr. Hadlock.

## 2.    Mr. Hadlock's Legal Position

Mr. Hadlock joins the legal arguments of Elite.

In addition, Mr. Hadlock asserts Plaintiff has no standing to sue him. Plaintiff's complete failure to provide the required statutory prelitigation notification to Mr. Hadlock personally before Plaintiff sued Mr. Hadlock personally prohibits him from recovering anything from Mr. Hadlock.

Furthermore, Plaintiff not only failed to mitigate his damages, he intentionally exacerbated them by duping Defendants into sending him a proposed contract under false pretenses.  Plaintiff has unclean hands.

Finally, Plaintiff's "evidence" of Mr. Hadlock's alleged actions taken after the prerecorded calls were made, unbeknownst to him, cannot and does not legally support Plaintiff's claim for punitive damages against Mr. Hadlock.

### 3.    ADT's Legal Position

ADT did not make the telemarketing calls to Mr. Roylance and has no vicarious liability for the acts of EliteSecurity or Hadlock.  The Authorized Dealer Agreement between ADT and EliteSecurity clearly states that EliteSecurity's status under the agreement is that of an independent contractor and EliteSecurity's status shall in no way be deemed to be that of an actual or ostensible agent.   The telemarketing calls made to Mr. Roylance, if any, were not made  by and/or on ADT's behalf.

### IV. MOTIONS

All prior and pending motions, their current status, and any anticipated motions.

Plaintiff made motions to enter default, to strike, and to remand.  Those motions were denied.

/ / / / / /

Plaintiff anticipates a motion to amend the pleading, motions in limine, summary judgment, and sanctions.

ADT anticipates filing a summary judgment motion challenging liability and damages.

Elite anticipates bringing a motion for summary judgment after discovery is closed and is open to any proposed hearing/briefing schedule.

Mr. Hadlock anticipates bring a summary judgment motion after conducting discovery.

## V. AMENDMENT OF PLEADINGS

The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

Plaintiff is currently seeking more information about the California voice blaster. They appear to be well hidden. Plaintiff may add those parties, or plaintiff may let the defendants pursue them. Discovery should make that clearer.

Plaintiff is considering adding class action claims. Elite points out that Mr. Roylance, who is not an attorney, may act as his own legal representative, but not do so for others.

ADT reserves the right to amend and/or file amendments or responses to any other amended pleadings filed by other parties.

# VI. EVIDENCE PRESERVATION

Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

Plaintiff is preserving his notes and recordings.  Plaintiff trusts that AT&T still possesses the call trace information.  Plaintiff believes tariffs require that information to be kept for at least two years.

Federal regulations under the Telemarketing Sales Rule require telemarketers and advertisers to preserve records for 24 months.

ADT is aware of its legal obligations and will preserve materials related to the issues of this case.

Elite is aware of its legal obligations and will preserve materials related to the issues of this case

Mr. Hadlock has taken reasonable efforts to preserve evidence in his possession,

# VII. DISCLOSURES

Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

ADT will make its Rule 26 disclosures as ordered by the court.

Elite will make its Rule 26 disclosures as ordered by the court. Elite's disclosures may require supplementation or amendment after Elite's principal returns from a family reunion and counsel has an opportunity to analyze any further documents.

Mr. Hadlock will make his Rule 26 disclosures as ordered by the court and in accordance with the FRCP.

## VIII. DISCOVERY

Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).

There have been some informal discovery exchanges, but a lot of detail is missing.

Plaintiff believes others have sued ADT for violations of the TCPA. Plaintiff is interested also in the compliance testing ADT agreed to do as part of its settlement agreement.

### Discovery Plan as per Rule 26(f)

A discovery plan must state the parties' views and proposals on:

/ / / / / / /

16

(A) What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

None.

(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

(i) Discovery shall be conducted on the factual and legal contentions of the parties' claims and defenses.  Please see below:

(ii) All discovery should be completed by August 3, 2009.

(iii) No limitations on discovery are contemplated at this time.

(C) any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;

None at this time.

(D) any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order;

None at this time.

/ / / / / /

(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

None at this time.

(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

None at this time.

Following receipt of disclosures, Elite plans on serving interrogatories, document demands and requests for production. Depending on the content of the responses, Elite may have follow up discovery. Elite envisions that this written discovery can be completed within the 120 days following initial disclosures. That discovery will be aimed at determining what facts, witnesses and documents exist that support any contention that Elite made any improper telephone calls, that before any alleged improper call to Mr. Roylance that Elite knew that improper calls were being made, that Elite may be held vicariously responsible for any improper calls, or that Elite engaged in any activity that might be viewed as a ratification or adoption of any such improper conduct.

Elite has asked Mr. Roylance to produce voluntarily and will conduct discovery regarding any recordings made of any calls forming the basis of plaintiff's claim, and any recordings of telephone calls with any person (other than

any attorney representing Mr. Roylance) in any way related to this case. The contention discovery will be accompanied by requests for admissions to set up an attorneys fees claim. At this point, Elite has not determined which depositions it will need to take, but notes that there may be a need for depositions outside of California. Elite's summary of its intended discovery is for descriptive purposes only and should not be viewed as a voluntary limitation on the scope of discovery. Elite expressly reserves the right to conduct any discovery relevant to, or reasonably calculated to lead to the discovery of admissible evidence related to, the issues of this case.

Mr. Hadlock agrees and joins with Elite's proposed discovery plan.

ADT agrees with Elite and Mr. Hadlock's proposed discovery plan. ADT would further add that upon completion of initial disclosures and written discovery, fact depositions will be taken prior to any disclosure of experts and production of expert reports.

## IX.  CLASS ACTIONS

If a class action, a proposal for how and when the class will be certified. Not applicable.

## X. RELATED CASES

Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

Plaintiff is unaware of related pending cases.  Plaintiff believes ADT has been sued for violating the TCPA before, and ADT was involved in a settlement agreement with the FTC.

## XI. RELIEF

All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

**Relief sought by Plaintiff**

Plaintiff seeks injunctive relief.

A.    The March 27, 2007 Call

The March 27, 2007 call was an unsolicited prerecorded call to a residential telephone that violated 47 USC § 227(b)(1)(B).  That's a compensable violation at 47 USC § 227(b)(3).   In addition, the prerecorded message violated the FCC regulations at 47 CFR § 64.1200(b)(1) because it did not identify the business initiating the call.  The call further violated 47 CFR § 64.1200(b)(2) because it did not give a telephone number.  The caller was not properly trained as required by 47 CFR § 64.1200(d)(4) because "John" provided bogus contact information – bad websites and phone number.  The prerecorded call is an abandoned call under 47

CFR § 64.1200(a)(6) [2003] because a live person did not come on the line within 2 seconds.   Each violation of TCPA subsection (b) or the FCC regulations has minimum damages of $500 per violation.   There were at least 5 violations, so minimum damages are $2,500. The violations were willful or knowing under the TCPA, so they should be trebled.  That brings us to $7,500.

TCPA damages are statutory damages; all parties are liable for them.

Prerecorded calls also violate the CLRA.  Punitive damages are a remedy at Civil Code § 1780.

The violations also involve malice, fraud, and oppression under the Civil Code § 3294.

Furthermore, the TCPA statutory damages are an inadequate deterrent for making prerecorded calls because it is economic to pay the statutory damages and continue to place prerecorded calls.  Punitive and/or exemplary damages should be set at an amount that makes the violations non-economic.  A BMW v Gore guidepost would support punitive damages at $11,000 per TCPA violation (i.e., the amount the FCC could impose for each violation).  Plaintiff believes reasonable punitive damages could be set much higher.  TCPA lawsuits are rare and even rarer when the call is anonymous.  Plaintiff believes the litigation rate is less than 1 per million anonymous calls. The labor savings is about $0.15 per call.  Consequently, damages are not a deterrent unless they are at least $150,000 per call.

### B.    The April 12, 2007 Call

The prerecorded call is similar to the earlier call, so the damage amounts should be the same.  Although "Ed" did not feed the plaintiff disinformation as "John" did, "Ed" did not identify the entity making the call.

### C.    Do Not Call Policy Demands

Plaintiff made demands for copies of the written do not call policy.  These demands were made during telephone conversations (to ADT and Hadlock) and in demand letters to all three defendants.  It was listed as demand item 7 in the certified demand letters that went separately to ADT, Elite, and Hadlock.  The letter explicitly mentioned that failure to provide the policy risked $1500 in statutory damages.

Arguably, Elite and Hadlock are not liable for a DNCP demand made directly to ADT, but ADT is liable for a DNCP demand made to Elite or Hadlock.

### D.    Other Violation

Plaintiff believes that discovery will turn up other violations of the TCPA.

### Relief sought by Defendants

### 1.    Relief sought by Elite

Elite reserves its rights to seek a defense and indemnity.

### 2.    Relief sought by Hadlock

Hadlock reserves its rights to seek a defense and indemnity.

### 3.    Relief sought by ADT

ADT anticipates seeking a dismissal on summary judgment against the baseless claims of the plaintiffs.  ADT reserves its rights to seek a defense and indemnity.

## XII. SETTLEMENT AND ADR

Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

Parties have tentatively agreed to try a settlement conference before a magistrate.  Elite wants to see the results of its written discovery before the settlement conference.

## XIII.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

No.

## XIV. OTHER REFERENCES

Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

No.

///////

## XV.  NARROWING OF ISSUES

Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

ADT can begin to narrow the issues once discovery has been exchanged

Elite requires discovery before it can begin narrowing issues.

## XVI. EXPEDITED SCHEDULE

Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

The parties do not believe that this is the type of case that can be handled on an expedited basis.

## XVII. SCHEDULING

Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

In light of Mr. Roylance's intention to add defendants, scheduling appears premature at this point.  However, to the extent deadlines are required at this point, the parties propose the following:

a.    Joinder of Parties and Amendment of Pleadings

**December 1, 2008**

b.    Discovery Cut-off

**August 3, 2009**

c.    Fact Witness lists to be exchanged

**April 1, 2009**

d.    Expert Witness Disclosure

Plaintiffs – **May 1, 2009**

Defendants – **June 15, 2009**

Dispositive motion deadline

**November 2, 2009**

e.    Mediation deadline

**December 15, 2009**

f.    Hearing on Dispositive Motions by:

**January 29, 2010**

g.    Pre-trial conference

**Four weeks before trial.**

h.    Trial

**May, 2010**

## XVIII. TRIAL

Whether the case will be tried to a jury or to the court and the expected length of the trial.

The parties expect a jury trial taking 4 to 5 days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Plaintiff has not filed a certification.  He will file one soon.

ADT has filed its Certification of Interested Entities or Persons.

Elite has not yet submitted its certification but will do so on its principal's return to the office.

Mr. Hadlock knows of no additional persons, entities or parties other than those to which Plaintiff has previously referred.

## XX. OTHER MATTERS

Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

Unknown at present.

Respectfully submitted,

Dated August 1, 2008          By: /s/ Gerald Roylance (by permission)
                                  Gerald Roylance
                                  1168 Blackfield Way
                                  Mountain View, CA 94040
                                  (650)948-1790
                                  *Plaintiff in Pro Per*

Dated August 1, 2008          **ABBOTT, SIMSES & KUCHLER, APLC**

                              By: /s/ Richard M. Simses
                                  Richard M. Simses (*Pro Hac Vice*)
                                  Paul M. Lavelle (*Pro Hac Vice*)


                                  Local Counsel for Defendant
                                  LONG, WILLIAMSON & DELIS
                                  Patrick Long
                                  400 North Tustin Avenue, #370
                                  Santa Ana, CA 92705
                                  (714)668-1400
                                  (714)668-1411 (fax)
                                  *Attorneys for the Defendant*
                                  *ADT Security Services, Inc.*

1

2

3

Dated August 1, 2008                    **TRIEBSCH & FRAMPTON**

4

5                                       By**:_____/s/_Michael Dini (by permission)_____**
                                                Michael Dini
6                                               300 N. Palm
                                                P.O. Box 709
7                                               Turlock, CA 953801-0709
8                                               (209)667-2300
                                                (209)667-6157 (fax)
9                                               *Attorneys for the Defendant*
                                                *EliteSecurity US, LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2   Dated August 1, 2008                **SMITH, CHAPMAN & CAMPBELL**

3

4                                       **By:** ___**/s/ Robert J. Hadlock (by permission)**___
                                        Robert J. Hadlock
5                                       1800 North Broadway, Suite 200
                                        Santa Ana, CA 92706
6                                       (714)550-7720
                                        (714)550-1251 (fax)
7                                       *Attorneys for the Defendant Sean*
8                                       *Hadlock*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28